Beathard against Lyons is our next case for argument. DeBraw. Thank you, Your Honor, and may it please the court. In the single paragraph in its opinion discussing qualified immunity, the district court did not discuss any of the plaintiff's factual allegations, much less analyze them under the required two-part inquiry. Instead, the district court generically stated that qualified of a case, and it denied the motion to dismiss simply on that basis. And why did that violate clearly established law for the district judge to think, I need more time and more facts to evaluate this claim? I hope it's clear I'm asking whether we have appellate jurisdiction. I understand, Your Honor. I believe you do for a couple of reasons. First of all, because there was a denial of the motion, and I think that this... It sounded to me that the district court just postponed decision on the motion. He made a timing decision. He said it's too early, and I do think we have cases saying if all a district judge says is come back later, it's not an appealable decision. The Karame decision is the closest thing to that, and there's there's two things I'd point out with respect to that decision. First, this court's subsequent decision in Ablez, I think, is indistinguishable procedurally from where we find ourselves here. In that case, the district court also said we don't have enough yet, so we're going to defer to until a later stage of the case, and the motion is therefore denied. And that denial conferred appellate jurisdiction. This court has done that again in Hanson with respect to qualified immunity, and also in Kaczynski with respect to qualified immunity. Additionally, the Karame decision, and I think this is important as well, that decision came before the Supreme Court's decision in Pearson v. Callahan, which of course changes the inquiry in that it allows either prong to be discussed first. I do think that's significant here because, of course, the clearly established prong in many cases can be a much more legal determination of the existing precedent at the time as compared to the facts well pleaded in the plaintiff's complaint. And here, there wasn't even a description in the district court's decision of why it couldn't proceed further, given the allegations that were made in the case. So we do think, I think Ablez is the easiest place for this court to go. I think it conclusively resolves that appellate jurisdiction is proper, and I mean that with respect to the cases that have been decided in other circuits as well, that the decision denying jurisdiction certainly, and also a decision that endorsed sort of this delay without any analysis, would create a circuit split with at least the 5th, 8th, and 4th circuits. And those are the cases discussed on page 15 of our briefing. So when faced with the qualified immunity inquiry here, what the district court should have done is taken all of the allegations in plaintiff's complaint as true, and then evaluated the two parties. That's the next thing. Even if the fact that the judge said denied makes the order appealable, why is the judge forbidden to say, I need more time? Is it your position that any plaintiff can say, I want you to any plaintiff or defendant? And if you don't do that, that's a denial, and that's a legal error, and here I am going. I think that it's a, I think it's a legal error if it doesn't at least, and I do think the clearly established piece here is significant, because I think that when the procedural, when it's raised at this procedural stage, I do think it's incumbent on the district judge, given the pleading standard, to at least look at the facts and the allegations as But why? If somebody, forget about immunity for a moment. Suppose somebody moves to dismiss the complaint under Rule 12b-6. A district judge may say, I just need more time. I'm not ready to rule on your motion yet. Come back to me with more evidence. Now, maybe the judge could rule on the complaint just looking at its language, but what deprives the district court of enough control over his docket to say, I want more time? I think it would be, it's a combination of things. I think it's the Supreme Court's consistent description of the immunity as one from suit, as well as the description of it being one that should be decided at the earliest possible time in the litigation, and also prior to discovery, if it's appropriately raised. And here, when you have a situation where it's raised and briefed by the defendants asserting the qualified immunity defense, and there aren't any cases that are cited from the plaintiff indicating any sort of clearly established authority, in that circumstance, I do believe that it's imperative that the court decide that motion at that time and make a ruling one way or the other about whether qualified immunity exists at that stage. What about Karame? Well, I think there's a Karame was a true deferral. It never, it did not deny the motion. It left the motion open and just said, we will evaluate that later. So I think this court's subsequent decisions in Abelez and Hanson and Chizinski, where you do have, you have similar situations where the court said, I would like to decide this motion at a later procedural time in this case, but there was a denial of the motion. And the other, and the second thing, the second piece of it is that that was decided prior to Pearson versus Callahan, which of course changed the analysis and that the more legalistic question of the clear, of whether clearly established law exists, can be decided in the first instance, as opposed to having to decide both prongs of the analysis. I must say, I find it very difficult to agree with you because, although it's true that the district judge confused a better word, maybe, used the word denied, there can be, I can't, for me, there's no doubt that he did not reject the qualified immunity arguments on the merits, but rather deferred ruling on that subject. Well, I, and I think there, a couple of things, I think that holding from this court here would be difficult to square with this court's decision in Abelez, because that's exactly what happened in Abelez, where the court said, I'm not going to decide the issue now, you're free to raise it again at summary judgment. And this court held that it had jurisdiction and took up the issue. I also do think that the court would run the risk of creating a circuit split with, with Abelez, and that there's an error in the circumstance. Well, just add it to all those other cases where there are circuit splits with us. No, I understand, Your Honor, but I also think that to best square it with this court's precedence, and I, and I, I hate to beat the same drum, but to square it with this court's precedence in this area, post Pearson versus Callahan, would require that same outcome here. Quickly on the clearly established point, if I may, I, we're left in a circumstance here where we don't have, at least as far as we can tell, any case that existed at the time that's been cited by plaintiff before this court or before the district court that creates the clearly established law in this area. They, they haven't cited a single case involving anything remotely analogous factually that came out the way that they would like this case to come out. It's the, I think it's a poster child for the application of clearly established law when you have that absence of authority here. And so, I think this court has the ability, should it find appellate jurisdiction, it could remand to the district court for evaluation of qualified immunity in the decision in Cheminsky. It can also analyze this question on its own, and if it does so, the most direct route to decision is via that clearly established prong of the analysis. If there are no further questions, I'll reserve the remaining time for rebuttal. Certainly, counsel. Mr. Cherdour. Thank you. Thank you. May it please the court, my name is Doug Lee, Coach Kirk Bethard, asking this court to affirm the district court. The court started off asking my friend about Karami and jurisdiction, and I would agree that the court below simply said, I'm not ready, I don't have enough information, we'll talk about it later. He did not reject . . . Yeah. I, I, I realized that Judge Shedid said, chatted, said, um, he, he was deferring the question of qualified immunity until such time as the record was more developed. But my question is, what factual development do you believe is necessary to assess qualified immunity with respect to the limited threshold question of whether this was personal or official speech? I think it's about what they knew, whether they understood, for example, the concept of viewpoint discrimination, whether they understood the ISU . . . You're not administering a law school exam to them, surely. No. Whether they understood the concept of viewpoint discrimination. That can't possibly be a subject of discovery. I think that they understood that they were doing wrong. I said it in a brief, and I think there are cases that suggested that when they offer Coach Bethard a false reason for terminating him from his position, we're allowed to infer certain things. We're allowed to infer their knowledge, and the, the, the appellants have said that qualified immunity does not protect government officials who act with knowledge of wrongdoing. So we're, we're allowed to that the standard is objective. Is there legal uncertainty? It is not what is in the defendant's head. This used to be referred to as a form of subjective immunity, but under current standards it's entirely objective. And whether you can pass a law school exam on viewpoint discrimination, a subject on which the justices don't agree among themselves, does not sound like a subject for I'm not in a position to administer a law school exam on this topic, but I think it is, it is significant to ask them why they gave what Coach Bethard even, even in a world in which the Supreme Court says that immunity is wholly objective. It has to do with the clarity of the legal rules, and whether a particular proposition is clearly established. Not what was in the I, I agree that there's enough in the record for judge, the judge below to have denied qualified immunity. I mean, Rosenberger was very, very explicit in 1995, and this court has cited Rosenberger repeatedly for the proposition that the government doesn't get to choose who wins in an argument over matters of public concern, and more to the point that the government doesn't get to choose your poster. And I pointed out in supplemental, a supplemental letter, the case of, I call it the t-shirt case, and that was clearly ruled upon by this court in 2008, but there this court said the government can't choose the t-shirts, at least when it comes to adults. I couldn't find a case that involved a football coach putting a poster on his door, but in this particular case where there were, there was a high school observing a day of silence to draw attention to the harassment of homosexuals, the high school allowed teachers and students to wear t-shirts with messages supporting tolerance for homosexual, homosexuals, but forbade the plaintiff from wearing a t-shirt that said, be happy not gay. According to the school, the t-shirt violated a ban, a rule banning derogatory comments about certain topics. But this court cited Rosenberger and said, very matter-of-factly, as if it went without saying, such a restriction would not wash if it were being imposed upon adults. Well, Coach Beathard is an adult, everybody at ISU is an adult, and there's a big distinction between what happens in that situation and, well I've got to ask you about this, because Coach Beathard didn't put his poster up in a vacuum. The department created their own posters, passed them around, put them up. Would you, would you agree that those posters the department disseminated really at that point became the official message of ISU? With, in that regard, I would say there was discussion, there was debate, there was already, there were already problems that have been created by one of the defendants himself who said something about all redbird lives matter and caused agitation. I'm asking about these posters specifically. So then, you know, the school creates these Black Lives Matter posters and puts them up. They're passing them out. Is that then the position of the school? Well, I think it might be, but in a university, I don't think it can, the university or these defendants, appellants can prohibit Coach Beathard from having his own message on this matter of public concern. He doesn't have to agree with the official message. If he's a government employee? Correct. He can have his own opinion. I believe that's very fundamental. So, if we, if we talk also about the issue of not having alleged a right that would be recognized, basically, the appellants are claiming that, you know, Coach Beathard put his poster on their office door and therefore that because it was his employees, his employer's office door, he wouldn't have had an office door, but for the fact that he was an employee, then it must be, you know, unofficial duty. And this court has rejected that. I mean, they're basically trying to, there aren't any facts that allege that decorating an office door was part of his official duties. As a matter of fact, he specifically alleges that decorating his office door was not part of his official duties and that the practice of decorating office doors is not addressed by ISU policy and is, in fact, very commonplace. Other employees decorate their office doors with items that they're choosing, including political, philosophical, and religious messages. But what they're doing, the appellant is arguing that this court should do something that it hasn't done in the past, and that is stretch the job description to cover any speech inside the workplace. And the Supreme Court has rejected that approach. This court has rejected that approach and said, basically, that the speech of a public employee can't be restricted simply because it occurs inside the office. That it's not enough for public employment to provide a factual predicate for the speech. So what they're doing in this case, or proposing in this case, is a standard that would cover Coach Beathard as soon as he drives into the football facility parking area, which is only available for employees. Suddenly, all of his speech would be transformed into government speech to his official duty. So the political or religious bumper stickers on the cars in the parking lot could form the basis for punishment because they're official duties. Conversations in the hallway, by the water cooler, in the bathroom, on and on. Official duties. No speech in any of these places would be protected by the First Amendment using the standard that the appellants are urging this court to support in the law for such a position. You know, Mr. Schroeder, I'm going to ask you something because time is fleeing. Would you agree that the second stage of the Pickering inquiry is going to be tougher for Mr. Beathard given the disruption that his speech apparently caused among team members? It may or it may not. I mean, as he pled in his complaint, there were already team members boycotting practice based upon statements made by one of the appellants. In the complaint, there are references to statements made by athletes to media that we just want everyone to know we do not forgive Larry Lyons. There's no statement whatsoever in any of these reports about Coach Beathard, and he shouldn't be required to pay the price for problems caused by Coach Larry Lyons. Thank you, counsel. Thank you, Your Honor. Anything further, Mr. Rao? Yes, Your Honor. Two brief points. First, qualified immunity is a reasonable person inquiry, an objective inquiry, and my friend articulates the question here as whether his client is entitled to have his own opinion. But the legal question isn't whether he's entitled to have his own opinion. It's whether the manner in which he expressed that opinion here is protected speech or not, and that turns on whether he was engaged in his official duties or not. And at qualified immunity, we engage with that question in light of the then existing precedent, and there is no then existing precedent illustrating that this was not pursuant to official duties and that it was therefore clearly established as a constitutional right. Secondly, at the very least, the district court must engage with the facts of the complaint. If this court is going to endorse some sort of deferral, at the very least, the district court should be required to explain what facts it needs, what factual development is required. Here, none is because of the absence of clearly established law. Thank you very much, counsel. The case is taken under advisement.